May it please the Court, my name is Craig Mueller. I represent Appellant Louis Matthews, and I'd like to reserve three minutes for rebuttal. This case was at the end of the complaint of error, resulted at the end of the 16th of October, after two and a half weeks of a very hard-fought and actually embitteringly fought trial. At the end of the verdict, the jury came in, and they were visibly upset. After some consideration, I asked that the jury be polled. The jury was, in fact, polled, and Juror No. 8 refused to coincide with the other jurors. She actually said that's not her verdict. That's not my verdict as read. She was visibly upset. There was another juror that was visibly upset, but she specifically said that's not my verdict as read. The Court then continued to read the ninth verdict. Has that ever happened to you before? No, sir. Never seen it before, never heard it before. And I've been practicing law for about 25 years, and I talked to all the old gray hairs in the courthouse, and no one had ever heard of it before. So it was a very unusual set of circumstances. Juror No. 9, 10, 11, and 12 all concurred with the verdict, and we now have revealed to everyone who is interested that it is 11-1 split on the juror. Judge Vinn sent the jury back to deliberate, which is as far as it goes. Now, that represents the first of three problems. And as I learned in the Navy, we call them cascading problems. The first problem creates a second bigger problem, which in turn created the third big problem. Are you saying that the first problem was that the judge sent them back to deliberate? Deliberate. At that point, I believe the proper course of conduct would have been declared a mistrial. But having sent them back to deliberate, we have revealed to the public that the jury is, in fact, split. So what case says that, I mean, this is a very unusual circumstance. Normally, the prohibition against revealing the jury split is before a verdict has been rendered. But do you have a case that says if the split is revealed in the process of polling the jury about the verdict, it's impermissible to send the jury back to continue deliberating? No, I do not, Your Honor. That's the difficulty I'm having with the argument that a mistrial was compelled because the case law basically talks about revealing the division of the jury before a verdict has been rendered. That's correct, Judge. And if I could, I'd like to tie this all together because it all comes together as a coherent whole. Not surprisingly, a short period of time later, the holdout juror is reported by the court services officer to be emotionally distraught and asking to be relieved of her obligations as a juror. Then the second and significantly larger cascading problem now occurs. The trial court, without consulting with I or with Phil Smith, the trial attorney in the U.S. Attorney's Office, decides to ex parte communicate with the judge to inquire. With the juror. With the juror, sorry. I'm a little animated. I feel pretty strong about this. I was trial counsel as well. Decides to congress with the juror for about a half hour down the hallway in another judge's chambers. Then, sua sponte, here comes the catastrophic failure, dismisses the jury, the juror, without consulting with counsel for the government or counsel for the defense. When I was appraised of these facts, I did my best to control my emotion. I asked immediately for a mistrial. And Mr. Smith, I will grant him his due, actually asked that the juror be canvassed. Inexplicably, trial court denied his request to canvass the juror. I then asked and was inquiring as to whether the juror was physically ill, because there is case law out there that says a judge can talk to a juror in emergencies. Fire, burning, asteroid heading towards a courthouse. The judge can talk to a juror to get for an emergency set of circumstances. A crying juror is not an emergency. I practice law. I'm in court every single day. People cry in courthouses. That's part of our job. There's no emergency here. There was no legal moral justification for ex parte-ing this juror without trial counsel and I, Mr. Smith from the government, being present. Nonetheless, the court took it upon itself to discharge that juror. So now I can go to the second level of error, and originally the first level of error I agree with. You have some concern. The second one is actually directly personal. Ex parte communication is inappropriate, absent in an emergency. My colleague argues in his brief, he says, well, it's our fault we have to establish prejudice. We do not have to establish prejudice. We have to only establish no prejudice and only potential prejudice for that to be plain error and reversible on a second right. Then we come to the third and catastrophic mistake, and the one that is the most offensive, is dismissing the holdout juror. This is on point, and it's on almost all fours with the Symington case. The Symington case was a, or the ruling was any reasonable possibility that dismissal is due to the merits, the juror's potential on the merits, then it is an automatic reversal. And at that point, the trial court has only two options, either to remand it or declare mistrial or send it back for additional deliberations. Counsel, was there some evidence in the record that at the time the court dismissed the juror that he was unaware that she was a holdout juror? I thought I saw something in the record to that effect. Yes, that was briefly in the record, and inexplicably after a two-and-a-half-week trial, the judge, and having sent the juror back after the holdout, somehow couldn't didn't recall that the juror he had dismissed was the 11-to-1 holdout. Well, maybe it's inexplicable, but that's part of the record, isn't it, that he did he was not aware at that particular juncture that she was the holdout juror? He asserts that. I agree. Having said that, had the law been followed and had Mr. Smith from the government and I been consulted, we would have pointed it out before she was dismissed. I understand, but I just think the record needs to be clear on, because you said that the record shows that she was excused because she — because of the merits of the case, and there is evidence that the judge did not know that she was the holdout juror, which would somewhat weigh against that argument. We both were standing there present requesting a canvas of the jury, and it was declined. I understand your point. I'm just saying that the complete record should be on the table. Oh, yeah. The complete record's there. I've got nothing to hide. You've got the entire transcript. Well, there's something, you know, he referred to her as Juror 9 when she was 8, and there's some — I believe the judge talked to — identified her as Juror 9, and now it's Juror 8 or vice versa. It was — Juror 8 at all times was the juror edition. No, no, I understand that. But the — I'm just saying the district court seemed a little bit confused about which juror was involved at certain points because he referred to the juror by the wrong number. I would not go so far as to presume what was — what the judge was laboring under at misapprehension. I do know that he didn't follow the law and call Mr. Smith and I into canvassing the juror. No, I understand that. I understand your argument. I'm just — again, we're just — the point here is I want to make sure we have the accurate record in front of us. And my recollection is that the judge said first he didn't recall that that was the juror that was a holdout, and then it's — but I thought later he had — he acknowledged that it was the holdout juror. Is that right or wrong? Yes, sir. Okay. He did. That's your recollection in my reading of the transcript? But it was caught his attention. Yes. Right. Right. Okay. He acknowledged that the juror he had dismissed was, in fact, the holdout juror. Right. Now, I do not believe the — Now, if the juror is not the holdout juror, it seems to me the other arguments get a lot weaker, don't you think? Isn't it a linchpin that this is the holdout juror that was dismissed? They do, but the reality is this was all one continuous transaction. I've assigned, through research and the case law, three different distinct errors conceptually, but the reality was is the juror was publicly outed at 11-1. Well, that's the purpose of the canvass. If you don't have the canvass — I agree. I mean, if you don't have the poll, what's the purpose of having the poll except to confirm or deny whether or not it's the verdict of all the jurors? Yes, Your Honor. So you run the risk that the jurors are going to be outed because you're asking specifically, is this your verdict? What should have happened at that moment, when Juror 8 said no, and we all took a deep breath for a second, because I don't think anybody in that courtroom had seen that problem before, what should have happened is the polling should have stopped. The poll's not completed, though. When you ask for a poll of the jury, you ask for a poll of the entire jury. And so the district court, in my view, has to complete that. If you — if the parties have asked for that, the district court has the obligation to complete that poll. Is there a case that says that the district court has an obligation to stop the polling of a jury mid-poll? Yes, actually. There was other — there was other circuits have actually — and in my colleague's brief, he actually tries to frame this issue as a polling issue and what should happen when the polling — But it started as one. Yes, it is. But it did. And that's why I described this as a cascading mistake. The first mistake led to the second mistake, which led to the third mistake. Right. But we're talking about plain error review. And I can understand in the moment why you didn't object, because it was so startling that they would continue the poll. But plain error review, we don't have any case law that says that you shouldn't complete the poll. That's — No, that's true. By itself, it's a tough argument, I think. Having said that — and I'll — at least for argument's sake, I'll concede for that purpose. But then we come to the second error. Now I've got a juror who has been identified as the lone holdout and who is clearly at odds with the majority view, is now complaining that she wishes to be relieved of her obligations as juror, sufficient that the court came into the jury room or had her moved from the jury room without checking with counsel, without checking with counsel for the government, without checking with counsel for defense, and then had a conversation with her. And he had a conversation with her without the court services officer there. There was no independent witness or recordation of what that conversation was. And when Mr. Smith, with my concurrence, asked for that canvas, he said it would serve no purpose. Now the law on this point comes down to the Simonton case, which says any reasonable possibility that the dismissal is with — to the merits of the case, merits, is plain error. Can I ask you why, in responding to Judge Rawlinson's question, you seem to concede that the trial judge was confused as to whether the juror he had just dismissed was the lone holdout? I — when — candidly, when Mr. Smith and I — and we were both fairly animated at that moment — when we called the judge out and inquired about it, he actually asked — acted confused. I — if he was actually sincerely confused — Are you talking about on the — in terms of the transcript, or are you just talking about — In the transcript. You can see there. Well, no. That's what I'm — I'm confused. You asked — well, no. Let me see. You called him? I was there, right? Okay. Yeah, yeah. No. I'm looking at this page of the transcript. I'm just wondering if this is where you're saying he got confused, because you asked, Judge, was that the juror who — was that the juror who dissented from the rest? Yes. That was — those were my words. And the judge said, I don't know that she dissented. And then he goes on. And then you asked again, well, okay, but there was this juror who, when we did the polling, said it wasn't her verdict, and the judge immediately says, oh, yes, yes, yes, she's the one. She's the one. So why was — I don't — I mean, was there — he was confused? It took him a while to put the two and two together? It might have, but it's irrelevant. The issue here in — No, I mean, we're just asking at the state of the record. We're not — Okay. That's the part of the transcript we're talking about. Yes. Is there not some other part where he got confused? That's correct. Okay. So, Your Honor, respectfully, I'll submit I've overpassed my time. Thank you, counsel. Good morning. May it please the Court. Adam Flake for the United States. Before I begin, I need to make a correction to my brief. On page 13, I inadvertently cited an unpublished opinion — That's all right. — without realizing it was unpublished. That's okay. There are many cases that have the proposition, and I just wanted to fall on my sword a little bit and point that out coming because it's an unpublished decision, and I didn't realize that at the time. All right. Remove your sword and go to the argument. Thank you. Go ahead. Well, I have the question in this case. I mean, the problem is it's a holdout juror. I mean, that's — everything else, I think, can be squared with case law or harmless error or plain error. But removing the holdout juror is pretty tough. And I recognize there might be a little difference between this case and Symington because the juror in Symington was removed because of the substantive views, and here it's an emotional reaction supposedly. But how do you — in the spirit of Symington, how do you defend the judge not removing the holdout juror? Well, two things, Your Honor. First of all, Symington is a little bit different in that my reading of that case was the other jurors wanted the holdout kicked, and so they went and complained to the judge, and it was really, I mean, ganging up on this juror so that the other jurors could — I mean, I don't want to ascribe bad faith to them, but get home and watch a baseball game probably. They wanted rid of this person. And here it was just the way that it went down. There's no complaints from other jurors. There's nothing like that. And one fact in the record that I wanted to point out, the juror asked to be excused at the end of deliberations on the first day before the jury poll, before any of this happened. This is the juror saying, I want out of this. And, you know, there's no doubt that she descended from the jury poll, but we have the judge who, it appears to me from reading the record, that Donna actually didn't realize that she was the holdout juror. You know, he says, I don't know that she dissented. And then when counsel points it out — That's why I asked that question. I don't read the transcript that way at all. I guess you weren't there. That's why I was asking your opponent. But why do you even read the part I just quoted? Why do you read that as the judge? I read them as being confused when your colleague here said, was that the one who dissented? And maybe it just didn't register because the judge said, well, there was this juror who asked before deliberations began to be excused, and then your colleague followed up and said, no, no, no, there was one who during the polling said that's not my verdict. And he said, oh, yeah, yeah, yeah, of course, that was the one. That's how I read the transcript. There was no confusion. As soon as he was focused on, is the juror you just dismissed the one who said this is not my verdict, he immediately said, oh, yes, yes, yes, she's the one. You know, once again, I wasn't there. From what I read in the record, I guess I just had a different take from it. It seemed to me that the judge had put together in his mind that this juror wanted to go home the night before, and then there was the jury poll and she dissented, but he didn't put it together in his mind that that was the same person until counsel pointed it out to him. And then he did put it together. But once again, the court has the record. I wasn't there. I guess we just disagree. But that was my reading of the court record.  Let's say the judge hadn't put two and two together until the juror had already gone home. Right. Does that change the analysis under Simon? Because the standard is still a pretty lenient one, lenient in favor of the defendant, right? It is quite lenient. And to be frank, I don't think that even if the judge weren't confused, I don't think we need that for the verdict to stand up, because what we have is the judge specifically finding, you know, later during the back and forth with counsel, we have the judge specifically saying, I did not dismiss this juror on account of her views. And — Well, no, but that's not — I guess I don't see that as the standard here. The standard is, is there any reasonable possibility that the condition that this seems to me the inference, the very strong inference from this record is that absolutely. She went back in there. She gave us a little piece of what started happening, and then the judge rightly cut her off. But even from that little snippet, we know that she went back in there and those other 11 jurors pounced on her, presumably, or at least they started getting back and forth into whatever disagreement led them to divide 11 to 1, and then she broke  So the judge is aware of all of that. I don't know how you can't say that there's a reasonable possibility that the reason she couldn't continue is because of her views on the merits. I don't — what is the other explanation? Your Honor, I think what it boils down to is just how broadly the — the Simington case uses the word impetus a bunch of times, and I think it boils down to how broadly the court interprets the term impetus was that the fact that she was disagreeing that upset her so much and the fact that she was upset got her kicked off the jury. That seems to be what Your Honor — that seems to be the way Your Honor is interpreting the case. I'm saying we don't know. None of us sitting here knows. You don't know. Your opponent doesn't know. But if you're — if we're asked, and I think this is what Simington tells us, if we're supposed to ask, is there a reasonable possibility that that's the case, I say there's probably more than that. It's probably — that's the most likely explanation. But is there a reasonable possibility that she wasn't able to continue because of her views on the merits and the friction that caused in the jury room? I think — I don't know. What other explanation is there? Well, Your Honor, and I — I — my argument is that Simington shouldn't be read that broadly. My argument is that the — the point of Simington is you can't kick somebody off of the jury because they won't go along. You can't kick somebody off of the jury because of their views. But if she — you know, if it had been one of the other jurors that had had a nervous breakdown or whatever, clearly we wouldn't be having the problem that we're having. Right. And, you know, one view — one way to read Simington is if your views led to the breakdown and led to you getting kicked off the jury, then that's — you're entitled to reverse — that verdict can't stand up. But what I'm saying is I think it's possible to read Simington to say you can't — like the — the point — the whole point of the — all of this is you don't get to kick somebody off of a jury because of their views. That's what the — that's what Simington is trying to prevent. There's a bunch of — we're certainly not disputing that. But what we're saying is you hold a dissenting view. You're also an emotional wreck, and you're not able to deliberate. But the fact that — but the inquiry that is forbidden is are you an emotional wreck because you — because of the view that you held? That's — that's why, you know, if we had never known about this juror, we would have been — if we hadn't known the juror's view, there would have been no problem. But Juror 10 — Counsel. — changed her mind. Do you agree with opposing counsel that the AUSA asked for a canvas of the juror? The AUSA did ask for a canvas. What happened was — Why do you suppose he did that? There was some confusion. If you read the — if you read the conversation between the court and the parties after the fact, there was some confusion about what actually transpired. And the court — because I believe the AUSA was under the impression that the court security officer heard the juror crying. The court security officer went and relayed it to the judge, and the judge dismissed the juror. And I don't think the AUSA realized that the judge himself had talked to the juror about it. And once the judge himself said, no, I talked to the juror, I observed her demeanor, I made the determination that she wasn't in an emotional state to be able to continue. And I don't see the point of having — I don't see the point of holding — of canvassing this juror who's having an emotional breakdown anyway. At that point, we weren't going to get the hearing, so we didn't push for it at that point. But we didn't — it would have — it puts us — I believe it puts us in a better stead than if it had just been the judge taking the CSO's office — the CSO's word for it. Well, I suppose, except it's a next-party communication and there's no record of it. I mean, this — if this were all on the record and we understood what the judge had talked to the juror about, we might be in a different position. That's correct, Your Honor. Once again, though, the judge did — discussing it with the parties after the fact, the judge did disclose his thought process and his observations. Unless the panel has any other questions, I'll submit. Okay. Thank you. We'll give you two minutes. Thank you. Just a very few points in rebuttal. In an accident investigation for aircraft, they always go back and take the time of things. And I want to make sure, because it's hard sometimes when you weren't there watching events that you see the exact timing. Jury and the trial is going along just fine. We come back with a verdict. We do the polling. The juror gets outed as the holdout 11-1. Some period of time later, she's now emotional. Everyone knows her view. She's got no cover, and she's got no privacy in the jury room. Then there's proper and established channels for law. What's to happen at this moment? She wants out. The judge can declare a mistrial, can send them back, or he can have a hearing and notify us, and we can canvass the jury. You may recall in the record I've inquired several times, has she seen a doctor? Is she ill? And I cut short on that discussion to find out if there was any reasonable reason why she can't continue. Now, her emotional reaction starts after she is outed. Well, not necessarily, because she has to be dismissed from the jury before the jury was sent out for deliberations, right? Something trial court didn't inform us until the day after the fact as well. Right. No, I'm just saying that in your sequence, you say she didn't become emotional until it was discovered she was a holdup, and, in fact, she had requested the judge to be dismissed before that time. Yes, sir. They had already been delivering for a full day by that point, that the issue had become contentious in the room as a reasonable certainty at that point. She was already wanting out at the end of the first day. All right. So would you explain something to me? Sure. When the juror asked to be replaced, I gather that nobody was in the courtroom? Or was this something that, I mean, how did the judge dismiss the jury at the end of deliberations that day? We, Mr. Smith and I, were informed of it after the fact. Oh, I understand. But, I mean, physically, what happened? Did the judge go into the jury room? Did the judge call the jury back in without you there? What happened? The work he made to us was that the court services officer brought her out, and then he took her down the hallway, let her calm down, and they came in, had an ex parte communication. Oh, no, I'm talking about the earlier event where the juror said she'd like to be excused. That apparently, and that's in the record, as you'll see. I wasn't present for it. But apparently he excused them for the evening, and then at the end of the evening, the first day of deliberations, she asked to be relieved. He said no. How did she ask? Did she send a note, or did she? No, she actually apparently asked in open court, can I be replaced? With all the jurors present? All the jurors present. And apparently the report was no, and then no one saw fit to tell us until after she was excused. You all, if I remember from the transcript, had basically agreed that you could, you didn't need to be present for the decision. No, it was a routine. That's why you didn't know about it, because you weren't there in the courtroom. No, so custom and practice in our jurisdiction is at the end of a day of deliberations, you don't have to come back, they just call you and say we're done for the day, come back tomorrow. All right, no, I understand. I'm just trying to figure out where this occurred. Was this in the courtroom where the jurors, they assembled, the judge brought back the jury without counsel present and said you're dismissed, or did the judge go into the jury room, or do we know? I read the record for the first time when it was handed to me, and that's the first time I've learned of those proceedings that there was actually a proceeding. In the courtroom? In the courtroom. I always saw the court services officer and said, hey, why don't you guys go home for the night? Yeah, okay. Usually the jurors are brought back into the courtroom because you charge them, not to talk about the case that you're, you know, all of the charges that you give them, you bring them back into the courtroom to do that, and then they're released for the day, generally. Mr. Matthews is entitled to relief. This was a hung jury 11-1. We're asking for application of law to fact to remand it for a new trial in accordance with the law. Okay. Thank you, counsel. The case shall start. You'll be submitted for decision.
judges: Thomas, Rawlinson, Watford